IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

LA TRINIDAD ELDERLY LP SE

    Debtor

CASE NO. 19-01830 (ESL)

CHAPTER 11

OPINION AND ORDER

This case is before the court upon the motion to dismiss filed by Loiza Ponce Holdings, LLC ("Loiza Ponce"), alleging that the petition was filed in bad faith and the opposition filed by the debtor, La Trinidad Elderly LP SE ('Debtor" or "Trinidad").  Loiza Ponce alleges that the instant petition was filed in bad faith as the purpose for filing the same was solely to stay the judicial sale of its real estate property and that Debtor lacks any reasonable likelihood of rehabilitation.  Debtor opposes the motion to dismiss alleging that it has complied with all requirements regarding the filing of schedules, statement of financial affairs, monthly reports of operation, a disclosure statement and chapter 11 plan.  Debtor also challenges the validity of Loiza Ponce's secured claim as the forbearance agreement which was entered by the debtor regarding the secured loan is null and void for not being authorized by the entity required to do so.  Debtor also alleges that the petition was filed to protect its main asset from foreclosure.  Loiza Ponce replied alleging that the instant petition, as well as the prior petition were exclusively filed to thwart the execution of the pending judicial sale of Debtor's only asset, the real property in which the elderly housing project sits.  Regarding the nullity of the forbearance agreement Loiza Ponce alleges that the issue was presented before the state court and Debtor is now estopped by its own acts as it created the situation which it now challenges.

Debtor admits that its first petition filed on September 25, 2018, case number 18-05549, was correctly dismissed on January 29, 2019 as the petition was not filed by an authorized agent/partner in accordance with the terms of the partnership agreement, that is, the investor

-1-

limited partner did not consent to the filing in writing.  The dismissal order was a bench ruling made at an evidentiary hearing on the motion to dismiss filed by Loiza alleging a bad faith filing. Since evidence was presented at the hearings held on November 29, 2018, December 11, 2018 and January 29, 2019, the parties have jointly moved the court to submit the present motion to dismiss on the evidence heard on these dates.

At the hearing held on June 18, 2019, the court ordered the parties to submit proposed findings of fact based on the evidence presented in case number 18-05549 in order to support their respective positions.  The court further ordered the parties to address in their proposed findings of fact the value of the property, the rental income, the amounts currently being paid to Loiza, whether there is a final judgment in the state court action considering the nullity of the forbearance agreement, and whether there have been any factual changes since the hearings in the prior petition.

The parties have submitted their proposed findings of fact and conclusions of law.  After reviewing the same, the court finds that the relevant facts are not in controversy.  The determinant factors concern the inferences that the court may draw from the facts and the legal conclusions resulting from the same.

Jurisdiction

This court has jurisdiction over the present contested matter pursuant to 28 U. S. C. §§ 157(a) and 1334(b).  The dismissal of a bankruptcy petition is a core matter pursuant to 28 U. S. C. § 157 (b).  Venue is proper under 28 U. S. C. §§ 1408 and 1409(a).

Background

On October 28, 2016, Loiza Ponce acquired all the rights over commercial loan 241889, originally for $5,000,000, granted on May 19, 2005, to Inmobiliaria La Trinidad, Inc., Builders Group & Development Corp., Miramar Plaza Realty, Inc, and Jorge Alberto Ríos Pulpeiro ("Loan"). The Loan was originally issued by FirstBank Puerto Rico and subsequently assigned to CPG/GS PR NPL, LLC ("CPG"). CPG further assigned it to Loiza Ponce. On August 24, 2010, Debtor substituted Inmobiliaria La Trinidad, Inc. as the principal debtor of the Loan, through an

Assumption and Modification of Loan. The Loan's collateral included a Mortgage Note for the principal sum of $4,000,000.00 guaranteed by a mortgage over a property in Ponce, a lot with a building with 130 subsidized rental units: Property 44,613 registered in the Puerto Rico Property Registration, First Section of Ponce, Volume 1,930, Page 93 ("Property").

On October 28, 2016, the Loan debtors executed a Forbearance and Settlement Agreement, and, accordingly, executed a Joint Stipulation requesting that the Court enter judgment in favor of Loiza Ponce. The Stipulation was filed with the Court of First Instance of the Commonwealth of Puerto Rico in Ponce ("State Court") on October 28, 2016, in case JCD2012-1013(406). Pursuant to the Stipulation, the Debtor recognized the amounts owed and, among other things, authorized the foreclosure of the Property. On November 17, 2016, the State Court issued a Judgment, approving and incorporating by reference the terms of the Stipulation.

On May 7, 2018, Loiza Ponce requested the execution of the Judgment. The State Court granted said petition on June 7, 2018 and issued the corresponding execution order and writ of execution on June 11, 2018. A notice of public sale was issued by the Marshal of the Court on July 26, 2018, scheduling the first public auction to be held on September 26, 2018. On September 25, 2018, the Debtor filed the first petition under Chapter 11 of the Bankruptcy Code, case number 18-05549, which was dismissed on January 29, 2019 because the bankruptcy petition was filed without the express authorization of Debtor's limited partner, who was required to approve such filing.

After the dismissal of the previous Chapter 11 petition, Loiza Ponce renewed the execution of the State Court Judgment and on March 19, 2019, the Marshal reissued the notice of public sale, scheduling the first sale for April 3, 2019. On April 2, 2019, again on the eve of the first judicial sale, debtor filed the instant petition.

Relevant Facts

1. La Trinidad Elderly LP SE was created in 2007. This partnership agreement has been amended with its last amendment in force subscribed on September 1, 2010. Currently, the composition of the Debtor is: Affordable Housing Living, Inc., who is the managing partner of

the partnership and holds .01% of interest and 1602 CATS # 1 Investments LLC, who is the limited partner and holds 99.99% interest. Debtor owns a 130-residential unit apartment building located at Castillo Street #11, Ponce, Puerto Rico, which provides affordable housing to eligible low-income elderly tenants. They are subsidized rental income. Forty-nine are under Federal "Section 8" and eighty-one under Law 173 of Puerto Rico.

2. The property, referred to as La Trinidad Elderly Project (the "Property), is also subject to a housing assistance contract, which provides for the receipt of rental assistance subsidies from the Puerto Rico Department of Housing pursuant to the provisions of Law No. 173 and the Section 8 Housing Project Based Program. The entities also are subject to different tax credits and tax grants. On August 24, 2010, the Debtor entered into a Subaward Agreement with the PRHFA, a government instrumentality of the Commonwealth of Puerto Rico, under the Tax Credit Exchange Program [TCEP] created pursuant to Section 1602 of the American Recovery and Reinvestment Act [ARRA] of 2009. Under this agreement, PRHFA provided a grant to the Company of $14,565,340 to partially fund the development costs of the Project. The grant amount provided from PRHFA was in the form of cash assistance and is not required to be repaid unless there is a recapture event with respect to a qualified low-income unit of the Project.

3. The closing of an initial forbearance agreement with First Bank was completed on August 24th, 2010. After the signature of the Forbearance Agreement with First Bank, 1602 CATS #1 Investments LLC became the limited partner of the project. CPG/GS PR NPL, LLC, acquired the Property on August 24, 2010, assuming a commercial loan number 241889 (the "Loan") issued by FirstBank Puerto Rico on May 19, 2005.

4. On August 24, 2010, Debtor entered into a Subaward Agreement with the Puerto Rico Housing Finance Authority ("PRHFA), under the Tax Credit Exchange Program created pursuant to Section 1602 of the American Recovery and Reinvestment Act of 2009.

5. On November 1, 2012, CPG/GS PR NPL LLC filed a Complaint against Debtor for collection of monies and foreclosure of real property, Civil Case J CD2012-1013 (406) before the

Court of First Instance, Ponce Section, captioned CPG/GS PR NPL LLC v. LaTrinidad Elderly L.P., S.E. (the "Ponce Mortgage Foreclosure Case").

6. On September 22, 2015, as part of the proceedings in the Ponce Mortgage Foreclosure Case, the Court of First Instance, Ponce Section, appointed Star Management Corporation as judicial administrator of Debtor's business, an elderly housing project (the "Property"). Star Management Corporation continues to administer the Property.

7. On October 28, 2016, pursuant to a Loan Purchase and Sale Agreement and a Bill of Sale, Loíza Ponce acquired from CPG/GS PR NPL, LLC all of CPG's rights and interests arising from the Loan for the principal sum of $5,000,000.00 issued by FirstBank pursuant to a Credit Agreement dated May 19, 2005 as amended and modified by an Assumption and Modification of Loan dated August 24, 2010.  By virtue of the Assumption and Modification of Loan, Debtor was substituted as the Loan's debtor.

8.  In addition to the purchase of the Loan, Loíza Ponce also acquired from CPG all guarantees and collateral securing the Loan, including:

a. Mortgage Note for the Principal sum of $4,000,000.00, dated September 23, 2010.

b. Deed No. 11 of May 19, 2005 before Public Notary Nelson Biaggi García, encumbering Property No. 44,613 of the Registry of Property, 1st Section, Ponce, Puerto Rico.

c. Collateral Assignment of Lease Agreement and Rents dated May 19, 2005.

d. Pledge and Security Agreement dated May 19, 2005.

e. Three (3) continuing Guaranties of Jorge Alberto Ríos Pulpeiro, Miramar Plaza Realty, Inc. and Builders Group & Development, Corp., all dated May 19, 2005.

f. Financing Statement dated May 19, 2005.

g. Four (4) Deposit Account Control Agreements issued by La Trinidad Elderly, L.P.S.E., Builders Group & Development Corp., all dated August 24, 2010.

h. Two (2) Security Agreements dated August 24, 2010.

i. Subordination Agreement dated August 24, 2010.

j. Eight (8) Guarantees issued by Jorge Alberto Ríos Pulpeiro, Vista del Monte Residence, Inc., Miramar Regency, Inc., Miramar Plaza Realty, Inc., Builders Group & Development Corp., Inmobiliaria La Trinidad, Inc., El Señorial Assisted Living Corp., 1959 Building Center, Inc., all dated August 24, 2010.

k. Addendum to Deposit Account Control Agreement dated September 23, 2010.

9. On October 28, 2016, Loíza Ponce and Debtor executed a Forbearance and Settlement Agreement whereby Debtor acknowledged its indebtedness to Loíza Ponce, its default in its obligations to Loíza Ponce, and assumed additional obligations in exchange for Loíza Ponce agreeing to forbear and refrain from exercising remedies available to it pursuant to the Loan and Collateral Documents.

10. Pursuant to the Forbearance and Settlement Agreement, Debtor entered into a Stipulation for the entry of Judgment in the Ponce Mortgage Foreclosure Case.

11. In light of the above referenced Stipulation, the Court of First Instance, Ponce Section, entered Judgment on November 17, 2016, which Judgment is now final and unappealable.

12. Commencing on October 26, 2016, Star Management Corporation forwarded the receipts of the rents of the Property, less its management fee and operation expenses to Loíza Ponce.

13. On June 11, 2018, the Court of First Instance, Ponce Section, issued an Order of Execution of Judgment and the Clerk of the Court issued the corresponding Writ of Execution.

14. On July 26, 2018, the Marshal of the Court of First Instance, Ponce Section, issued the corresponding Edict of Judicial Sale, which Edict was published twice in a newspaper of general circulation and notified to all interested parties in compliance with Rule 51.7 of the Puerto Rico Rules of Civil Procedure.

15. The first judicial sale was scheduled for September 26, 2018.

16. On September 25, 2018, Debtor filed the first Chapter 11 petition.

17. On January 29, 2019, this Honorable Court dismissed Case No. 18-05549 for Debtor's limited member's failure to agree to the Chapter 11 petition filed.

18. Upon dismissal of Case No. 18-05549, Loíza Ponce renewed the execution of the State Court Ju19ment. On March 19, 2019, the Marshal reissued the notice of public sale, scheduling the first sale for April 3, 2019.

19. On April 2, 2019 the Debtor filed the instant petition. The mandatory schedules, including the Statement of Financial Affairs were filed on April 17, 2019. Debtor filed its Amended Schedules and Statement of Financial Affairs on May 22, 2019.

20. On July 1, 2019, Debtor filed its Disclosure Statement and Plan of Reorganization dated June 30, 2019. The Court scheduled the hearing to consider Debtor's Disclosure Statement for September 17, 2019. Debtor has filed its Monthly Operating Reports for the months of April, May and June 2019.

21. Debtor's assets are the real property, a lot with a building with 130 subsidized rental units valued at $3,500,000.00, and the inventory, furniture, equipment, accounts receivable, and operational accounts related to the operation of said real property.

22. Loíza Ponce is a secured creditor and has a claim over Debtor's property which amounts to $5,862,334, as of January 24, 2019, interest accruing at the per diem rate of $946.18.

23. Debtor also lists as secured debts taxes owed to the Municipal Revenue Collection Center ("CRIM", in Spanish) and a second mortgage granted by PRHFA in the amount of $14,565,340.00.

24. Debtor has no employees.

25. Debtor is not receiving income, as the receipts of the rents of the Property, less Star Management Corporation's management fees and operation expenses, were forwarded to Loíza Ponce and are now deposited in Star Management's Operational bank account.

Applicable Law

Dismissal pursuant to section 1112

The Court's discretion to dismiss or convert a Chapter 11 case is limited if cause is established. See Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968, 2008

WL 4531982 (B.A.P. 1st Cir. 2008); AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.), 360 B.R. 398, 401 (Bankr. D. N.H. 2007) ("Prior to its amendment, the statute provided that a court 'may' dismiss the case upon finding cause but amended section 1112(b) provides that a court 'shall' dismiss if cause is found, absent unusual circumstances."). The initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove its position that there is cause for either conversion or dismissal of the Chapter 11 case, whichever is in the best interests of creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4] (16th ed. 2011). "Thus, until the movant carries this burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id. Once cause is found, the burden shifts to the opposing party to show why dismissal or conversion would not be in the best interests of the estate and the creditors. See In re Dr. R. Samanta Roy Institute of Science Technology Inc., 465 Fed. Appx. 93, 96-97 (3rd Cir. 2011). Once the movant establishes "cause", the burden shifts to the debtor to demonstrate by evidence the "unusual circumstances" that establish that dismissal or conversion to Chapter 7 is not in the best interests of the creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.05[1] (16th ed. 2011). The bankruptcy court retains discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate. See In re Gilroy, 2008 Bankr. Lexis 3968. A determination of unusual circumstances is fact intensive and contemplates facts that are not common to Chapter 11 cases. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.05[1] (16th ed. 2011). If the Chapter 11 case is devoid of "unusual circumstances", then the bankruptcy court must apply the Section 1112(b)(2) analysis to determine whether the Chapter 11 case is dismissed or converted. The objecting party must establish all of the factual elements stated in subparagraphs (A) and (B) of Section 1112(b)(2). See Alan N.

Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.05[1] (16th ed. 2011). Thus, the bankruptcy court may not convert or dismiss a case if: "(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the cause' for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time." In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D.N.M. 2008), aff'd 421 B.R. 602 (B.A.P. 10th Cir. 2009).

Although Section 1112(b)(4) of the Bankruptcy Code fails to define what the term "cause" means, it provides a list of circumstances that constitute "cause" for conversion or dismissal. This list of causes is non-exhaustive and therefore a case may be converted or dismissed for other causes. See In re AmeriCERT, Inc., 360 B.R. at 401; Tuli v. US Trustee, 124 Fed. Appx. 830, 831 (5th Cir. 2005). Also see 11 U.S.C. § 1112(b)(4) (using the term "includes" before listing various reasons for dismissing a case).

Section 1112(b)(1) requires "notice and a hearing" prior to dismissal or conversion. The phrase "notice and a hearing" is defined as "after such notice is appropriate in the particular circumstances, and such opportunity for a hearing is appropriate in the particular circumstances". 11 U.S.C. § 102(A) (emphasis added). Also see Yehyd-Monosson USA, Inc. v. Fokkena (In re Yehyd-Monosson USA, Inc.), 2011 Bankr. LEXIS 3725 (8th Cir. 2011) (no evidentiary hearing was required under 11 U.S.C. § 1112 when the court's decision is supported in a Debtor's admission of a fact), In re De Jounghe, 334 B.R. 760, 766 (1st Cir. B.A.P. 2005) ("a full evidentiary [hearing] is not required, so long as the parties had a fair opportunity to offer relevant facts and arguments to the court and to confront their adversaries' submissions"); In re C-TC 9th Ave. Partnership, 113 F. 3d 1304, 1312 (2nd Cir. 1997) (an evidentiary hearing was not necessary when "the record is sufficiently well developed to allow the bankruptcy court to draw the necessary

inferences to dismiss a Chapter 11 case for cause").  Even when a non-evidentiary hearing is conducted under 11 U.S.C. § 1112(b), "failure to offer evidence at the hearing may constitute a waiver by the debtors."  In re De Jounghe, 334 B.R. at 766 ,citing In re City Stores Co., 42 B.R. 685, 689 (S.D.N.Y. 1984).

After the moving party establishes that there is cause to dismiss or convert the case to Chapter 7, the court must choose between dismissal or conversion, "whichever is in the best interest of creditors and the estate."  11 U.S.C. § 1112(b)(1).  The standard for choosing between conversion or dismissal based on "the best interest of creditors and the estate" implies application of a balancing test by the bankruptcy court.  See In re De Jounghe, 334 B.R. at 770; In re Staff Inv. Co., 146 B.R. 256, 260 (Bankr. E.D. Cal. 1992).  The legislative history shows that Congress intended to invest the bankruptcy court with "wide discretion … to make an appropriate disposition of the case" and "to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases."  In re De Jounghe, 334 B.R. at 770, citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 406, reprinted in 1978 U.S.C.C.A.N. 5963, 6361-6.

Good Faith Requirement

Lack of Good Faith (or Bad Faith) may be grounds for dismissal under section 1112(b). This court in In re Costa Bonita Beach Resort Inc., 479 B.R. 14 (Bankr.D.P.R.2012) held that lack of good faith (or bad faith) in filing a Chapter 11 petition constitutes "cause" to dismiss a Chapter 11 petition pursuant to 11 U.S.C. § 1112(b)(1). This court also rejected the use of the mechanical checklist approach to determine lack of good faith (or bad faith) for all cases, irrespective of whether they fall under the SARE category pursuant to 11 U.S.C. § 101(51B). The court held the following in In re Costa Bonita Beach Resort Inc., regarding lack of good faith (or bad faith) as a cause for dismissal of a Chapter 11 petition:

"Good faith is not a statutory requirement for the filing of a Chapter 11 petition. However, it is a requirement for a Chapter 11 plan to be confirmed. 11 U.S.C. § 1129(a)(3). The unsettled issue is whether lack of good faith (or bad faith) may constitute "cause" to dismiss a Chapter 11 petition under 11 U.S.C. § 1112(b)(1). See Ali M.M. Mojdehi & Janet Dean Gertz, The Implicit "Good Faith" Requirement in Chapter 11 Liquidations: A Rule in Search of a Rationale?, 14 Am. Bankr.Inst. L.Rev. 143 (2006). Any determination of good faith, or lack of good faith (bad faith) is fact intensive and must consider the totality of the circumstances on a case by case basis. In Chapter 11 cases the court must carefully consider the distinctions between liquidation and reorganization as both are valid objectives under the Bankruptcy Code."

Several Circuits have determined that lack of good faith (or bad faith) in filing a chapter 11 bankruptcy petition constitutes "cause" to dismiss or convert a case to Chapter 7 pursuant to 11 U.S.C. § 1112(b). See Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068 (5th Cir.1986); In re Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture), 936 F.2d 814 (5th Cir.1991); Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir.1989); Trident Assocs. Ltd. Partnership v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. Partnership), 52 F.3d 127 (6th Cir.1995); NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F.3d 108 (3rd Cir.2004); In re Albany Partners, Ltd., 749 F.2d 670 (11th Cir.1984). The First Circuit has not decided whether lack of good faith (or bad faith) in the filing of a Chapter 11 bankruptcy petition constitutes "cause" under 11 U.S.C. § 1112(b). See Fields Station LLC v. Capitol Food Corp. (In re Capitol Food Corp.), 490 F.3d 21, 24 (1st Cir.2007). One court declined the proposition that 11 U.S.C. § 1112(b) imposes a good faith filing requirement in a SARE case. See In re Victoria Ltd. Partnership, 187 B.R. 54, (Bankr.D.Mass.1995).

The First Circuit has determined that if 11 U.S.C. § 1112(b) imposes a good faith filing requirement, then it is the movant that must establish prima facie that the petition was filed in bad faith before the burden shifts to the debtor. See In re Capitol Food Corp., 490 F.3d at 24 ("Although the bankruptcy court held that subsection 1112(b) imposes no good faith filing requirement, we

-11-

need not address this matter in the present case. Even the courts which have found a good faith filing requirement would demand that Fields Station first make prima facie showing that Capital Food filed its petition in bad faith."); Farnsworth v. Morse (In re Farnsworth), 2009 Bankr. Lexis 3699, *18, (B.A.P. 1st Cir.2009); In re Miller, 2009 Bankr. Lexis 3351, (Bankr.D.Mass. 2009). The First Circuit noted that, "[c]atastrophic business events, such as an imminent or threatened foreclosure on the debtor's interests in real property essential to successful reorganization efforts, are precisely the sort of imminent financial distress for which debtors routinely seek chapter 11 protection." In re Capitol Food Corp., 490 F.3d at 25 citing In re Liberate Techs., 314 B.R. 206, 216 (Bankr.N.D.Cal.2004). The First Circuit also observed that a good faith petition must seek to preserve or create some value that would otherwise be lost outside of bankruptcy and that it is not bad faith to seek to gain an advantage from declaring bankruptcy. Id. at 25.

The determination of whether the movant has established prima facie that there is a lack of good faith (or bad faith) in the filing of a bankruptcy petition is a fact intensive inquiry in which the court analyzes the totality of the circumstances. See In re Farnsworth, 2009 Bankr. Lexis 3699, *20 citing Marrama v. Citizens Bank of Mass. (In re Marrama), 430 F.3d 474, 482 (1st Cir.2005) aff'd, 549 U.S. 365, 127 S. Ct. 1105, 166 L.Ed.2d 956 (2007). Lack of good faith or bad faith is atypical conduct that constitutes an abuse of the bankruptcy process. See Marrama v. Citizens Bank, 549 U.S. 365, 375, 127 S. Ct. 1105, 166 L.Ed.2d 956, fn. 11 (U.S. 2007); Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 82 (1st Cir. 2012). Good faith is driven by the congressional intent of Chapter 11 relief. "Chapter 11 is designed to offer greater recovery for creditors and equity owners than liquidation in a Chapter 7 case by providing a means by which financially distressed businesses or individuals may restructure their finances by obtaining confirmation of a plan which provides either a continuation of the business, or retention or orderly sale of assets, and

-12-

exiting bankruptcy relieved of burdensome debts and obligations." Hon. Nancy C. Dreher & Hon. Joan N. Feeney, Bankruptcy Law Manual, § 11.1 (5th ed. 2011).

The totality of the circumstances test cannot be reduced to a mechanical checklist (irrespective of the chapter or whether it is in the filing of the petition and/or the confirmation of the plan). See In re Puffer, 674 F.3d at 81 ("The totality of the circumstances test cannot be reduced to a mechanical checklist, and we do not endeavor here to canvass the field and catalogue the factors that must be weighed when determining whether a debtor has submitted a Chapter 13 plan in good faith"). The First Circuit has determined that, "in all events, good faith is a concept not a construct. Importantly, it is a concept that derives from equity. This matters because equitable concepts are particularly insusceptible to per se rules." In re Puffer, 674 F.3d 78, 82. Thus, this court, in conformity with the determinations of the First Circuit in In re Puffer rejects the mechanical checklist approach for a determination of lack of good faith (or bad faith) for all cases, irrespective of whether they are SARE cases. Good faith is an abstract idea generalized from particular circumstances and not a working assumption." Id. 479 B.R. at 39–40.

In this case the key factors are the timing of the bankruptcy petition, the litigation between the Debtor and Loiza Ponce, the nature and extent of the secured claim held by Loiza Ponce, the value of the property, the payment under the chapter 11 plan of Loiza Ponce's claim, and the likelihood of rehabilitation pursuant to the terms of the confirmed plan.

Rooker-Feldman

Pursuant to the Rooker-Feldman doctrine, federal district courts do not have jurisdiction over "federal complaints...[that] essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments." Exxon Mobil Corp. v. Saudi Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521, 161 L. Ed. 2d 454 (2005); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413,

44 S. Ct. 149, 68 L. Ed. 362 (1923). The rationale underlying the doctrine is that only the United States Supreme Court has jurisdiction over appeals from state courts, including the Supreme Court of Puerto Rico. 28 U.S.C. §§1257 and 1258; Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F. 3d 17 (1st Cir. 2005).

In Exxon Mobil, the Supreme Court of the United States restated the confines of the Rooker-Feldman doctrine, the unanimous court concluding that:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commences and inviting district court review and rejection of those judgments, *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." 125 S. Ct. At 1521-1522.

The Court explained the limited circumstances in which Rooker-Feldman applies and stated that "[i]n both cases, the losing party in state court filed suit in federal court after the state proceedings ended..." Id. at 1526. However, the Rooker-Feldman doctrine is "confined to [1] cases brought by state court losers [2] complaining of injuries caused by state court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." Lance v. Dennis, 546 U.S. 459, 464, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006) (quoting Exxon Mobil, 544 U.S. at 284); see also Coors Brewing Co. v. Mendez-Torres, 562 F. 3d 3, 19 (1st Cir. 2009). The Court recognized that "[c]omity or abstention doctrines may, in various circumstances, permit or require federal court to stay or dismiss the federal action in favor of the state-court litigation." Id. at 1527.

In Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F,3d 17 at 19, 21 – 24 (1st Cir. 2005) the United States Court of Appeals for the First Circuit altered its prior understanding of Rooker Feldman after Exxon Mobil.  410 F. 3d at 19, 21-24. The court of appeals held in Federación that the Rooker-Feldman doctrine applies only in the

-14-

limited circumstances where the losing party files the action in federal court after the state proceedings have ended. 410 F. 3d at 24. A state court judgment is sufficiently final for the application of the Rooker-Feldman doctrine when the state proceedings have ended; if the federal proceedings are begun before the state proceedings have ended then the doctrine does not deprive the federal court of jurisdiction. Id. at 24, citing Exxon Mobil, 125 S. Ct. at 1526.

The court of appeals goes on to discuss three situations, or tests, to determine whether state proceedings have "ended." 410 F. 3d at 24. First, state proceedings have ended "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved." Id. Second, state proceedings have ended "if the action has reached a point where neither party seeks further action." Id. Lastly, state proceedings have ended, for purposes of the Rooker-Feldman doctrine, on the federal questions at issue, "if the state court proceedings have finally resolved all the federal questions in the litigation but state law or purely factual questions remain to be litigated." Id.

Pursuant to the laws of Puerto Rico, a judgment is a decision that revolves in final form the controversy before it so that an appeal may be taken. U.S. Fire Insurance Co. v. Autoridad de Energia Electrica, 151 D.P.R. 962 (2000). A judgment is final and firm (final y firme) when it is unappealable or subject to reconsideration. Suarez Morales v. Estado Libre Asociado de Puerto Rico, 162 D.P.R. 43 (2004); Bolívar v. Aldrey, 12 D.P.R. 273 (1907). In the instant case, the state proceedings have ended and there is a final judgment. Therefore, this bankruptcy court may not interfere with the final judgment in the complaint against Debtor for collection of monies and foreclosure of real property, Civil Case J CD2012-1013 (406) before the Court of First Instance, Ponce Section, captioned CPG/GS PR NPL LLC v. LA Trinidad Elderly L.P., S.E. (the "Ponce Mortgage Foreclosure Case").

Discussion

It is the debtor's position that the Forbearance and Settlement Agreement subscribed on October 28, 2016 and the complementary documents are null *ab initio* and invalid because the limited partner 1602 CATS #1 Investments, LLC did not authorize any of those transactions in conformity with the Partnership Agreement. With this contention as a basis, the Debtor has submitted a chapter 11 plan which classifies Loiza Ponce (Class 5) as a creditor holding a disputed claim as to both the nature and amount owed, fixed at no more than $3,682,427.00. Loiza Ponce filed a proof of claim as a secured creditor in the amount of $6,082,818.91. Distribution to Loiza Ponce under the proposed chapter 11 plan hinges on a final determination of an adversary proceeding challenging the nature of the claim and an objection to claim opposing the amounts claimed by as secured. The Debtor has not filed an adversary proceeding against Loiza Ponce nor an objection to its proof of claim. Consequently, the secured proof of claim filed by Loiza Ponce is deemed allowed. 11 U. S. C. § 502(a). Moreover, the claim is based on a final judgment in a state court action, which this court may not revisit under the Rooker Feldman doctrine.

The undisputed value of the real property which is subject to Loiza Ponce's lien is $3,500,000.00. Therefore, Loiza Ponce is an under secured creditor.

The holders of the lien over the Debtor's real property, CPG/GS PR NPL LLC and now Loiza Ponce have tried to collect on the amounts owed by the Debtor and foreclose the real property since November 1, 2012. The state court has entered a final judgment in favor of the plaintiff secured creditor, has issued execution orders, writs of execution, and has scheduled a public sale for September 26, 2018 and April 3, 2019. The Debtor filed the first chapter 11 petition on September 25, 2018 and the current petition on April 2, 2019, that is the day before each of the dates for which the public sale of the property was scheduled.

The Debtor is not making current payments to the secured creditor and is presumptively reserving the amounts in its bank account. The repayment terms proffered in the chapter 11 plan are not clear and premised on weak legal basis. Thus, any positive cash balance in the monthly reports of operations must be adjusted to conform to this reality.

The court notes that the Debtor does not have employees and is operated by a state court ordered judicial administrator, Star Management Corporation.

After considering the above facts in light of the applicable law, the court finds that the instant bankruptcy petition was filed solely for the purpose of forestalling the imminent public sale of its real property.  The court further finds that the Debtor has not shown a likelihood to have a chapter 11 plan within a reasonable time in view of its treatment of the secured claim held by Loiza Ponce.  Therefore, the court concludes that the petition was not filed in good faith, that is, for a valid bankruptcy purpose.

Conclusion

In view of the foregoing reasons, the motion to dismiss filed by Loiza Ponce is hereby granted and the instant bankruptcy petition is dismissed.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this  13th day of September 2019.

Enrique S. Lamoutte
United States Bankruptcy Judge

-17-